# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

```
----------------------------------------------------- :
MAXINE PHILLIPS, Individually and on                   :
Behalf of All Others Similarly Situated,               :
                                                       :   Civil Action No. 1:15-cv-1343
              Plaintiff,                                :
                                                       :
v.                                                     :   CLASS ACTION COMPLAINT FOR
                                                       :   VIOLATIONS OF SECTIONS 14(a)
REMY INTERNATIONAL, INC., JOHN J.                      :   AND 20(a) OF THE SECURITIES
PITTAS, DOUGLAS K. AMMERMAN,                           :   EXCHANGE ACT OF 1934
KARL G. GLASSMAN, LAWRENCE F.                          :
HAGENBUCH, CHARLES G. McCLURE,                         :   JURY TRIAL DEMAND
ARIK W. RUCHIM, GEORGE P. SCANLON,                     :
J. NORMAN STOUT, JOHN H. WEBER,                        :
                                                       :
              Defendants.                               :
----------------------------------------------------- :
```

## CLASS ACTION COMPLAINT

Maxine Phillips ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is a class action brought by Plaintiff on behalf of herself and the other public stockholders of Remy International, Inc. ("Remy" or the "Company"), other than Defendants (defined below) and their affiliates, against Remy International, Inc. ("Remy" or the "Company") and Remy's Board and certain of its officers (collectively "Defendants"), for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with

the proposed merger between Remy and BorgWarner Inc., Band Merger Sub, Inc. ("Merger Sub") (collectively, "BorgWarner").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Form Schedule 14A Proxy Statement ("Proxy Statement") to be filed with the SEC.  The Proxy Statement recommends that Remy stockholders vote on *September 22, 2015* in favor of approving a proposed transaction whereby Remy will merge with a newly formed subsidiary of BorgWarner and Remy stockholders will receive $29.50 in cash, without interest, less any applicable withholding taxes (the "Merger Consideration") for each share of Remy common stock they own (the "Proposed Transaction" or "Merger").

3.      As discussed below, the consideration Remy's stockholders stand to receive in connection with the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other common stockholders of Remy.  Defendants have now asked Remy's stockholders to support the Proposed Transaction in exchange for inadequate consideration based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the process leading up to the consummation of the Merger Agreement, including: i) the terms and financial analyses concerning various alternative strategic transactions that were considered for Remy; and ii) the financial analyses conducted by UBS Securities LLC ("UBS"), financial advisor to Remy.

4.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the

material information discussed below is disclosed to Remy's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

6.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Remy maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

8.     Plaintiff is, and has been at all relevant times, the owner of Remy common shares and has held such shares since prior to the wrongs complained of herein.

9.     Defendant Remy International, Inc. is a Delaware corporation with a principal place of business at 600 Corporation Drive, Pendleton, Indiana, located within this United States District.

10.     Individual Defendant John J. Pittas ("Pittas") was appointed to the Board in December 2014.  He was appointed President and Chief Executive Officer of the Company in March 2013.

11.     Individual Defendant Douglas K. Ammerman ("Ammerman") has served on the Company's Board of Directors since January 31, 2013.  Ammerman has served as a member of the Board of Directors of Fidelity National Financial, Inc. (NYSE:FNF) ("FNF"), where he also serves as Chairman of the Audit Committee.

12.     Individual Defendant Karl G. Glassman ("Glassman") was appointed to the Company's Board of Directors on February 3, 2015.

13.     Individual Defendant Lawrence F. Hagenbuch ("Hagenbuch") has served the Company's Board of Directors since November 18, 2008.

14.     Individual Defendant Charles G. McClure ("McClure") was appointed to the Company's Board of Directors on February 3, 2015.

15.     Individual Defendant Arik W. Ruchim ("Ruchim") was elected to the Company's Board of Directors in June 2015.  Ruchim is a Partner at H Partners Management, LLC, an investment management firm.  H Partners Management LLC, a hedge fund manager, is the second largest shareholder (after FMR LLC) in Remy with a holding of 3,843,336 shares of Remy as of July 31, 2015.  At the offer price of $29.50, this represents a position of $113,378,412, making Ruchim hold interests (due his LLC's ownership position in Remy) that are in conflict with Plaintiff and the other common shareholders.

16.     Individual Defendant George P. Scanlon ("Scanlon") has served on the Company's Board of Directors since October 18, 2012.   Previously, he served as Chief Executive Officer of Fidelity National Financial, Inc. (NYSE:FNF) ("FNF") from October 2010 to December 2013. Prior to that, Scanlon served in various senior executive roles with FNF and its affiliates from February 2008 to October 2010 including Chief Operating Officer of FNF. FNF had an equity interest in Remy of 16,342,508 shares prior to December 31, 2014.  Using the closing price on December 31, 2014 of $20.92, FNF sold its interest in Remy of about $341 million in 2014.

17.     Individual Defendant J. Norman Stout ("Stout") has served on the Company's Board of Directors since December 7, 2007.

18.     Individual Defendant John H. Weber ("Weber") is Chairman of the Board and has served on the Company's Board of Directors since January 2006.

19.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants".

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Remy common shares who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

21.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable.  As of August 3, 2015, there were (A) 31,802,084 shares of common stock (including restricted shares), (B) 719,100 shares of common stock underlying options with an exercise price below

the per share merger consideration of $29.50, (C) 20,038 shares of common stock underlying stock appreciation rights with a reference price below the per share merger consideration of $29.50 and (D) 11,166 shares of common stock underlying restricted stock units.  The holders of these shares are believed to be geographically dispersed through the United States;

(b)      There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members.  The common questions include, *inter alia*, the following:

i.      Whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder;

ii.     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii.    Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated as presently anticipated.

(c)      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(d)      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f)      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**A.**   **The Proposed Transaction Undervalues Remy**

22.   Remy has three divisions:  ***Original Equipment, Aftermarket, and Locomotive***.

Remy's ***Original Equipment*** ("OE") division is comprised of three primary channels:

- Remy is a major supplier for such original equipment manufacturers as General Motors, DaimlerChrylser, Toyota, Honda and Hyundai/Kia.

- Heavy-duty vehicles: Remy is the leading supplier of original equipment and aftermarket starters and alternators for heavy-duty vehicles in North America.

- Electric motors for electric and hybrid applications: Remy is the world's largest independent production electric motor supplier and a leader in many aspects of hybrid and electric vehicle technology, including our patented hairpin stator technology.

Remy's OE business has operations in the US, Mexico, Brazil, China and Korea.

23.   As one of the largest producers of remanufactured starters and alternators for the

***Aftermarket***, Remy provides electrical replacement components, replacement parts and

powertrain/drivetrain components for automobiles, light trucks, heavy-duty trucks and other

heavy-duty vehicles. In the automotive segment Remy is a major supplier to large automotive

parts retailers like Autozone and O'Reilly.  In addition Remy supplies repair shops with Remy

brand through a network of Warehouse Distributors ("WD") customers.  In North America,

Remy Power Products facilities are located in Mexico, Oklahoma, and Virginia.

24.   The ***Locomotive*** division remanufactures locomotive power, marine and industrial

engine components. Remy has two main locomotive facilities in North America:

- Peru, Indiana: remanufacturers power assemblies, top deck jewelry, and engine components; and

- Winnipeg, Canada: remanufactures crankshaft, camshaft, roots blower, drive gears, and engine components.

25.     Despite the Company's consistently improving financials and strong cash distribution to stockholders, the Board entered into the Merger Agreement for consideration that undervalues the Company.

**B.      The Unfair Sale Process**

26.     As described in the Proxy Statement, the Proposed Transaction is the result of a disorganized, unfocused process that was designed to advance BorgWarner's interests at the expense of Remy's stockholders.  Indeed, the conflicted Board and senior management of the Company failed to properly shop the Company in a manner that could generate the most advantageous transaction for Remy's public stockholders.  Indeed, the conflicted management dominated the process, ultimately agreeing to merge Remy into BorgWarner for inadequate consideration.  The inadequate Merger Consideration is the result of the Board's failure to control for obvious conflicts of interest until the process, in effect the Merger, was a *fait accompli*.

27.     The Remy Board has a total of nine members.  Of those nine members, President and Chief Executive Officer Pittas was conflicted in that he led the negotiations, may or may not have his future employment with BorgWarner on his mind, and is the subject of special compensation triggered through a change in control like the proposed Merger.

28.     Ammerman and Scanlon were put on the Board by FNF.  With FNF having sold its equity interest in Remy of 16,342,508 shares prior to December 31, 2014, an amount of approximately $341 million in 2014, Ammerman and Scanlon had achieved their goal.  For Ammerman and Scanlon, the sale of the Company was of little significance after FNF's interest in the Company was sold.

29.     Ruchim is a Partner at H Partners Management, LLC, an investment management firm.  H Partners Management LLC, a head fund manager, is the second largest shareholder

(after FMR LLC) in Remy with a holding of 3,843,336 shares of Remy as of July 31, 2015.  At the offer price of $29.50, this represents a position of $113,378,412, making Ruchim hold interests (due his LLC's ownership of a huge illiquid position in Remy) that are in conflict with Plaintiff and the other common shareholders.

30.     The only remaining directors are Karl G. Glassman, Lawrence F. Hagenbuch, Charles G. Mcclure, J. Norman Stout, and John H. Weber.  Surprisingly, defendants Weber, Ammerman and Ruchim formed Remy's Strategic Committee.  Thus, two of the three directors on the Strategic Committee were conflicted.

31.     On May 8, 2015, however, as described in the Proxy Statement:  "***The [strategic] committee was formed to facilitate the Board's exploration and evaluation of strategic alternatives (including the potential proposal from Parent), not due to any Board conflict***."  Proxy Statement, p. 29.  The Proxy Statement is false and misleading in that it does not disclose that two of the three directors on the Strategic Committee were conflicted.

32.     Moreover, the sale process is unfair and the Proxy Statement is misleading due to certain voting agreements.

33.     First, while the Proxy Statement does disclose that "concurrently with the execution of this Agreement, H Partners Management, LLC, H Partners, LP, H Partners Capital, LLC, P H Partners Ltd., H Offshore Fund Ltd. and Rehan Jeffer (collectively, "*H Partners Group*") are entering into a Voting and Support Agreement with Parent (the "*Voting Agreement*"), the Proxy Statement misleadingly states merely that FMR LLC is a holder of more than 5% of Remy Stock.  The Proxy Statements misleading omits to disclose that FMR LLC is the single largest shareholder of Remy stock.  In addition, the Proxy Statement misleadingly

omits to state whether or not FMR LLC has or has not entered into a voting agreement, either verbally or in writing, to support the Merger.

34.     Second, although the H Partners Group Voting Agreement is attached to the Proxy, and indicates defendant John H. Weber is a signatory to that Voting Agreement, the Proxy does not disclose that defendant Ruchim is a Partner at H Partners Management, LLC, the hedge fund, and that the H Partners Group is the second largest shareholder (after FMR LLC) in Remy with a holding of 3,843,336 shares of Remy as of July 31, 2015.  At the offer price of $29.50, this represents a position of $113,378,412, making Ruchim hold interests (due his LLC's huge illiquid ownership position in Remy) that are in conflict with Plaintiff and the other common shareholders.

35.     During the month of April 2015, the Company negotiated and then entered into a non-disclosure agreement ("NDA") with BorgWarner.

36.     The Proxy Statement fails to disclose whether or not any other potential buyer expressed an interest in Remy or entered into an NDA prior to the end of April 2015.

37.     Finally, on June 4, 2015, the Strategic Committee retained its own financial advisor, UBS, to provide advice in connection with the Proposed Transaction.  According to the Proxy Statement, "The strategic committee selected UBS based on, among other factors, the strength of the investment banking team that UBS proposed to dedicate to the Company, UBS's extensive knowledge of the Company, having served as an adviser to the Company since 2007, UBS's experience advising clients in the automotive industry with respect to strategic transactions, UBS's strong international presence, UBS's willingness to agree to a fee structure that would, in the event the Board were to resolve to sell the Company, incentivize UBS to seek a higher price for the Company than the price already offered by Parent and UBS's knowledge of

the universe of potential bidders for the Company. ***Prior to its engagement, UBS confirmed to the Company that it wasn't aware of any matters (including work for Parent) that would conflict with it serving as the Company's financial adviser in connection with the Company's review of strategic alternatives***." Proxy Statement, p. 30. ***The Proxy Statement is false and misleading in that it does not disclose whether or not UBS disclosed to Remy that UBS's affiliate was the 11th largest holder of BorgWarner stock, with a contemporaneous equity position in BorgWarner of over $196 million***.

38.      According to the Proxy Statement, "The Company selected UBS as its financial advisor in connection with the merger because UBS is an internationally recognized investment banking firm with substantial experience in similar transactions. UBS is regularly engaged in the valuation of businesses and their securities in connection with mergers and acquisitions, leveraged buyouts, negotiated underwritings, competitive bids, secondary distributions of listed and unlisted securities and private placements." Proxy Statement, p. 45.

39.      Again, the Proxy Statement fails to disclose that a related UBS entity, UBS Global Asset Management Americas Inc., prior to June 30, 2015, owned 3,941,284 ***of BorgWarner, the Buyer***, or a holding of ***$196.472 million*** at the BorgWarner stock price of $49.85 at the close on June 30, 2015. Twelve days later, UBS gave is fairness opinion to the Board stating that the per share merger consideration to be received by Remy stockholders was fair from a financial point of view. Thus, UBS stood on both sides of the deal at the time it was advising the Remy Board about what a fair price BorgWarner should pay for Remy, a UBS affiliate was holding approximately $196 million of BorgWarner stock, and the better the deal for BorgWarner in its purchase of Remy shares, the better the deal for UBS as a whole.

40.     The Proxy Statement is false and misleading because instead of disclosing that UBS stood on both sides of the transaction with a significant equity stake in BorgWarner stock, the Proxy Statement states only:  "***In the ordinary course of business, UBS and its affiliates may hold or trade, for their own accounts and the accounts of their customers, securities of the Company and Parent and, accordingly, may at any time hold a long or short position in such securities***."  Proxy Statement, p. 45.  Indeed, the Proxy Statement fails to disclose that UBS Global Asset Management Americas, Inc. is ***the Eleventh Largest Holder of BorgWarner stock***.

41.     UBS will receive a total of $8.6 million in connection with the Merger, $1 million for the fairness opinion, and$7.6 million of which is contingent on the consummation of the Merger.

42.     On July 12, 2015, the Board, after UBS delivered its oral opinion to the Board, the Board approved the Merger Agreement and the voting and support agreement.

43.     The Board's process in approving the Merger was marred by the obvious conflicts of four of the nine board members and their financial advisor UBS.  These conflicts resulted in a strategic process and valuation of Remy that concentrated on the Company's value to BorgWarner, and not its value as a stand-alone entity.  Accordingly, the Board did not seek out a potential sale of the Company except in the context of the Company's relationship with BorgWarner.

**C.      The Materially Incomplete and Misleading Proxy Statement**

44.     On August 18, 2015, Defendants filed the Schedule 14A, Definitive Proxy Statement with the SEC.  The information contained in the Proxy Statement will be disseminated to Remy's stockholders to solicit their vote in favor of the Merger.  The vote is to take place on September 22, 2015.  The Proxy Statement denies the Company's stockholders material information concerning the financial and procedural fairness of the Merger.  Without such

information, Remy stockholders cannot make a fully informed decision about whether to vote in favor of the Merger.

### *Disclosures Concerning the Insufficient Strategic Process*

45.     The Proxy Statement fails to disclose the costs and benefits of the Company remaining as an ongoing standalone.

46.     The Proxy Statement fails to disclose the dollar value of the fees UBS has received since 2007 for the advisory services it has provided to Remy.  Such information is material to Remy's stockholders, as it will allow them to fairly assess whether UBS's fairness opinion was improperly influenced by conflicts of interest.

47.     The Proxy Statement further fails to disclose any information concerning services UBS has performed for BorgWarner during the past two years and the amount of fees it has received in connection with such services. Given that UBS's advice and analyses directly impacted the Board's and Strategic Committee's review of the Proposed Transaction and other strategic alternatives, information concerning any conflicts of interest UBS may have faced is material to Remy's stockholders.

### *Disclosures Concerning UBS's Fairness Opinion*

48.     Regarding UBS's "Discounted Cash Flow Analysis," the Proxy Statement fails to disclose (a) the identity, quantity, and source of the cost-of-equity assumptions for both companies; (b) the implied perpetuity growth rates corresponding to the assumed terminal pricing multiples; (c) what forecast period was used in the analysis; and (d) whether terminal multiples applied on a trailing or forward basis.

49.     Regarding UBS's "Selected Public Trading Companies Analysis," the Proxy Statement fails (a) to display the observed company-by-company pricing multiples and financial

metrics examined by UBS and (b) the implied per share values for each multiple. This information is necessary to understand the analyses otherwise misleading.

50.     Regarding UBS's "Selected Transactions Analysis," the Proxy Statement fails to disclose (a) the observed transaction-by-transaction (i) enterprise values, (ii) pricing multiples, and (iii) financial metrics; (b) whether other multiples and/or transaction premiums were examined (if so, they should be disclosed) and (c) the implied per share values derived. This information is necessary to understand the analyses otherwise misleading.

51.     The Proxy Statement fails (a) to identify, quantify, and source the WACC assumptions; and (b) to justify the use of a range of terminal values of 9.75% to 11.25%.  Proxy Statement, p. 42.

### *Disclosures Concerning Financial Projections*

52.     Regarding the "Company Forecasts" table on page 47, the Proxy Statement fails to disclose (a) unlevered free cash flows; and (b) reconciliation of GAAP net income to non-GAAP UFCF and non-GAAP EBITDA.

53.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

**D.     Defendants Knew or Negligently Disregarded that the Proxy Statement Omits Material Information**

54.     The Individual Defendants knew or negligently disregarded that the Proxy Statement omits material information concerning the Proposed Transaction and/or contains the materially incomplete and misleading information discussed above.

55.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy Statement before it was filed with the SEC, and thus knew or should have known that the

Proxy Statement contains misleading partial disclosures of the history leading up to the Merger and the financial analyses performed by UBS.

56.     Further, the Proxy Statement indicates that the Board relied upon the recommendation of the Strategic Committee and approved the Proposed Transaction, and was presumably aware that UBS had performed various financial analyses in support of its fairness opinion and that material information concerning UBS's analyses was not included in the Proxy Statement.

57.     Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning UBS's analyses which has been omitted from the Proxy Statement, and thus knew or should have known that such information has been omitted.

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

58.     Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

59.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the future value of Remy, certain key inputs and assumptions of the financial analyses performed by UBS in support of its fairness opinion, and the background leading up to consummation of the Merger Agreement.

60.     In so doing, Defendants made materially incomplete and misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each

of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

61.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

62.     Specifically, and as detailed in ¶¶ 46-55 above, the Proxy Statement violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) the future value of Remy; (ii) certain key inputs and assumptions of the financial analyses performed by UBS in support of its fairness opinion; (iii) the background leading up to the Proposed Transaction; and (vi) the compensation that UBS has received from interested parties over the past two years.

63.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy Statement states that UBS reviewed and discussed its financial analyses with the Board and the Strategic Committee during various meetings, and further states that the Board and the Strategic Committee considered both the financial analyses provided by UBS as well as UBS's fairness opinion and the assumptions made and matters considered in connection therewith.   The Individual Defendants knew or should have known that the material information identified in ¶¶

46-55 above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified in ¶¶ 46-55 above to be materially incomplete and misleading.

64.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction on September 22, 2015.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

65.     Plaintiff incorporate each and every allegation set forth above as if fully set forth herein.

66.     The Individual Defendants acted as controlling persons of Remy within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Remy's General Partner, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

67.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board and the Strategic Committee prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

69.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

70.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

71.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

72.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

C.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.     Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  August 25, 2015.                    Respectfully submitted,

RILEY WILLIAMS & PIATT, LLC


/s/ William N. Riley
William N. Riley (#14941-49)
James A. Piatt (#28320-49)
301 Massachusetts Avenue
Indianapolis, IN  46204
Tel:     (317) 633-5270
Fax:     (317) 426-3348
Email:  wriley@rwp-law.com
            jpiatt@rwp-law.com

*Attorneys for Plaintiff*

**OF COUNSEL**

Juan E. Monteverde
Miles D. Schreiner
FARUQI & FARUQI, LLP
369 Lexington Ave., Tenth Floor
New York, NY  10017
Tel:     212-983-9330
Fax:     212-983-9331
Email:  jmonteverde@faruqilaw.com
            mschreiner@faruqilaw.com

*Attorneys for Plaintiff*